452

In the Matter of Joseph P. Weber, on Behalf of Himself and All Others Similarly Situated, Appellants, *v.* Arthur Levitt, as Comptroller of the State of New York and Administrator of the New York State Policemen's and Firemen's Retirement System, Respondent.

In the Matter of Edward Lecci, on Behalf of Himself and All Others Similarly Situated, Appellants, *v.* Arthur Levitt, as Comptroller of the State of New York and Administrator of the New York State Policemen's and Firemen's Retirement System, Respondent.

In the Matter of Daniel Greenwald, Individually and as Representative of the Nassau County Patrolmen's Benevolent Association, Appellant, *v.* Arthur Levitt, as Comptroller of the State of New York and Administrator of the New York State Policemen's and Firemen's Retirement System, Respondent.

Third Department, May 31, 1973.

*Richard Hartman* and *Allen R. Morganstern* for appellants.

*Louis J. Lefkowitz, Attorney-General* (*John Q. Driscoll* and *Ruth Kessler Toch* of counsel), for respondent.

GREENBLOTT, J. These are appeals from: (1) a judgment of the Supreme Court at Special Term in the first above-entitled action, entered August 16, 1972 in Albany County, which denied petitioner's application, in a proceeding pursuant to CPLR article 78, for an order enjoining the respondent from recomputing petitioner's final average salary as defined in paragraph b of subdivision 9 of section 302 of the Retirement and Social Security Law by excluding certain items; (2) a judgment of the Supreme Court at Special Term in the second above-entitled action, entered August 16, 1972 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, for an order directing the respondent to recalculate petitioner's final average salary as defined in paragraph b of subdivision 9 of section 302 of the Retirement and Social Security Law by including certain items; and (3) an order of the Supreme Court at Special Term in the third above-entitled action, entered August 16, 1972 in Albany County, which, in an action for a declaratory judgment, denied, with one exception, plaintiff's motion for summary judgment and declared that section 431 of the Retirement and Social Security Law was not unconstitutional as applied to lump sum payments for accrued sick leave credits and termination pay.

These cases raise questions as to which items should be included in computing for pension purposes the " final average salary " of appellants, employees of the Nassau County Police Department and members of the Policemen's and Firemen's Retirement System. Certain statutory provisions are applicable to all three cases. Unless otherwise indicated, all references are to the Retirement and Social Security Law.

Paragraph b of subdivision 9 of section 302 defines "Final average salary" as follows: "In the case of a member having credit for three years or more of member service, such term shall mean his highest average annual compensation earned during any three consecutive years of member service for which he is credited, provided that a member by written request, filed with the comptroller prior to the effective date of retirement and in form satisfactory to the comptroller, may select any other period of three consecutive years of member service for which he is credited."

At the core of the above definition is the term "annual compensation", which is itself defined in paragraph a of subdivision 2 of section 302 as "the salary or wages *annually earnable* by a member, including maintenance, or any allowance in lieu thereof, received by the member." (Emphasis added.)

### THE WEBER CASE.

Appellant Weber, a patrolman in the Nassau County Police Department for over 20 years, retired on February 23, 1970. The contract then in effect between Nassau County and the Patrolmen's Benevolent Association of the Nassau County Police Department provided, *inter alia,* that upon retirement after 20 years of service, a patrolman was entitled to a lump sum payment for termination pay computed on the basis of three days' pay for each year of completed service. Respondent computed appellant's "final average salary" by including all forms of compensation received during the final three years, including the lump sum termination payment in its entirety. In 1972, respondent, alleging that an error had been made, recomputed the final average salary, taking into consideration only nine days' (three days for each of the last three years) worth of termination pay, thereby reducing appellant's benefits. Special Term found that termination pay had been earned at a rate of three days per year of service, and denied the petition.

Appellant contends that, since paragraph d of subdivision 9 of section 302, which sets forth an alternative means of computing "final average salary", prohibits the inclusion of "any form of termination pay", the Legislature must be presumed to have intended to allow the inclusion of the full amount of termination pay in "final average salary" as computed under paragraph b of subdivision 9 of section 302, since the latter contains no such prohibition. While we agree that the absence from paragraph b of subdivision 9 of a prohibition such as that contained in paragraph d of subdivision 9 evinces a legislative

intent that some termination pay may be taken into account, such termination pay as may be included is still limited to that amount which represents "compensation earned" during a three-year period.

Appellant urges that since, under the contract, termination pay is received "upon separation from service, after twenty (20) years", such pay is only "earned" upon retirement. We disagree. Termination pay could be treated as having been earned in the 20th year of service, as appellant contends, only if such pay was a component of compensation for the 20th year alone. We view termination pay as having been earned by a full 20 years of service, and, of course, each year of service contributed equally to the amount of pay so earned. This conclusion is borne out by the fact that the quantum of termination pay is directly related to the total number of years of service.

Furthermore, the only significance of the 20th year is that previously earned termination credits then become vested. If the first year of vesting was to be treated as the year in which the first 20 years' credits were earned, a patrolman who had served an additional three years, thereby earning an additional three days' credits per year which vested at the end of each such year, would have a lesser amount of termination pay included in his "final average salary" than a fellow officer with "only" 20 years' total service. Obviously, the Legislature could not have intended such an illogical result. Since termination pay must be treated as earned over the 20-year period rather than in the 20th year, the Comptroller was correct in determining that the amount "earned during [the last] three consecutive years" (§ 302, subd. 9, par. b) is that amount representing three years' worth of termination credits (nine days).

Appellant further contends that for two years he had received retirement benefits which had been determined by including in "final average salary" the full amount of termination pay, and thus a contractual right to the continuance of such payments was established between himself and the Retirement System in accordance with the decision of the Court of Appeals in *Kranker* v. *Levitt* (30 N Y 2d 574). Such a contract, it is urged, cannot be impaired without violating section 7 of article V of our State Constitution.[1] *Kranker* held section 431 unconstitutional insofar as that statute prohibited the inclusion of a lump

---

1. § 7 [Membership in retirement system; benefits not to be diminished nor impaired.] After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.

sum payment for unused vacation pay in the final average salary of members of the Retirement System prior to the statute's effective date.[2] In 1957, 15 years prior to the effective date of section 431, the Comptroller had begun the practice of including the cash value of accrued but unused vacation credits — up to a maximum of 30 days — in computing final average salary. The Court of Appeals held that a contract had been established and that the applicable provision of section 431 could not be retroactively applied to employees who had been members of the system prior to the effective date of section 431 without violating the contract.

We are in accord with Special Term's holding that no contract had been established requiring the inclusion of *full* termination pay in the computation of final average salary. In our view, *Kranker* did not hold that a course of action of the Comptroller must have existed for a given period of time before constituting a contract,[3] for any determination of a specific period of time could only be done on a purely arbitrary basis. Rather, we feel that the time period involved in *Kranker* was not as pertinent to the decision as the fact that the Comptroller's course of action in including the payments there involved was a reasonable one. If the Comptroller had embarked upon a course of conduct in conflict with clearly-defined legislative policy, no valid contract could have resulted therefrom. To hold otherwise would give the Comptroller license to defy the will of the Legislature by making illegal payments and then sanctifying such illegal payments as constitutionally unimpairable contracts. In the present case, the inclusion of the full termination pay would, as previously discussed, do violence to the legislative mandate that " annual compensation " be limited to compensation " annually earnable " (§ 302, subd. 2, par. a) as opposed to compensation received in any given year; therefore the Comptroller's act of including the full payment was lacking in legal authority and cannot rise to the status of a contract. By way of comparison to *Kranker,* we cannot overlook the fact that the Comptroller in that case had limited the includable payments to a maximum of 30 days. Such a limitation bore a reasonable relation to the amount of unused vacation pay which might have been actually

2. The constitutionality of section 431 as regards other forms of lump sum payments, including termination pay, is again before us in the *Greenwald* case.

3. In its decsion in *Greenwald,* Special Term did so read *Kranker* in determining the applicability of section 431 to termination pay. As shall be demonstrated here and in our discussion of *Greenwald,* we think that position was erroneous.

earned in a three-year period, and, since the amount of unused vacation pay which may be earned can vary from year to year, unlike termination pay which is earned on the basis of a specified number of days per year, the selection of that limitation was a reasonable exercise of administrative discretion. The same conclusion could not be reached as to the inclusion of termination pay for a 20-year period, but it would be valid as applied to the Comptroller's subsequent decision to include termination pay for three years in the computation of " final average salary " under paragraph b of subdivision 9 of section 302. Thus, a contract was established as to the practice of including some termination pay in " final average salary ", but not as to the amount which the Comptroller had been including prior to his decision to recompute. We therefore hold that, as to employees who were members of the retirement system prior to the effective date of section 431 and who receive, upon retirement, termination pay pursuant to contracts effective prior to that date, the inclusion of termination pay on an entitlement basis of three years in the computation of " final average salary " under paragraph b of subdivision 9 of section 302 constitutes a contract the benefits of which cannot be diminished or impaired by virtue of section 7 of article V of the Constitution.

The judgment in the *Weber* case should be affirmed, without costs.

THE LECCI CASE.

Appellant Lecci retired from the Nassau County Police Department on January 2, 1971, where he had been employed for more than 21 years. Under a contract then in effect between the employer and the Patrolmen's Benevolent Association, an employee, upon retirement in good standing after 20 years' service, became entitled to a lump-sum cash payment for termination pay computed on an entitlement basis of three days for each year of service, and four days for each year in completed service after January 1, 1972.[4] In addition, such an employee became entitled to a lump-sum payment of 50% of the value of his accumulated and unused sick leave up to a maximum of 165 days. In computing appellant's " final average salary " under paragraph b of subdivision 9 of section 302 respondent included only three-twenty-firsts of the termination pay (representing three days per year for three years), and none of the sick pay. Appellant instituted this proceeding to compel respondent to

---

4. The four-day provision would not apply to Lecci, since he did not have any years of service after January 1, 1972.

include the full amount of both lump sum payments in his " final average salary ". Special Term dismissed the petition.

With regard to termination pay, the same issues are presented as were before us in the *Weber* case, and our decision there is controlling. The respondent was not required to include more than nine days' termination pay in Lecci's " final average salary ".

The includability of a lump-sum payment for sick pay presents a somewhat different problem, for there is no prior administrative practice which might be said to give rise to a contract. Appellant argues that the enactment in section 431 of a provision prohibiting the inclusion of any sick leave pay in " final average salary " must be read as indicating that, prior to the enactment of that statute, sick leave pay was to be included in the computation. Special Term rejected this contention, holding that the provisions of sections 333 and 341 (subd. j) prohibited the inclusion of unused sick leave payments. We agree with this conclusion. Section 333 provides that a participating employer may, by the adoption of a resolution in a prescribed manner, " provide for its own employees any of the benefits provided [for state employees] * * * listed in ", among other provisions, " a. subdivision j of section three hundred forty-one ". Subdivision j of section 341 provides, in essence, that State employees who are members of the Retirement System shall be granted service credit for accumulated but unused sick leave upon retirement, " but such credit shall not * * * [c] be considered in computing final average salary." Special Term held that, since a resolution had not been adopted by the Nassau County Police Department pursuant to section 333, sick leave credits could not be taken into consideration in any form in computing benefits. We note, however, that, prior to the enactment of section 333 by chapter 467 of the Laws of 1970 and the enactment of subdivision j of section 341 by chapter 457 of the Laws of 1970, the Appellate Division, Second Department had held that collective bargaining agreements which gave to employees the right to receive accumulated but unused sick leave payments were valid and enforceable (*Matter of Teachers Assn., Cent. High School Dist. No. 3 [Board of Educ., Cent. High School Dist No. 3, Nassau County]*, 34 A D 2d 351). It therefore appears that the enactment of sections 333 and 341 (sub. j) was not necessary to enable public employers to grant to their employees such lump-sum payments for sick leave, but rather the enactment of these provisions merely codified existing law. However, in providing that such credit " shall not * * * be

considered in computing final average salary '' the Legislature was not merely restating the law as it existed, but must have intended to prohibit the inclusion of such payments in final average salary regardless of whether the source of those payments was a collective bargaining agreement such as that in the *Teachers Association* case (*supra*), or a resolution adopted pursuant to section 333. Of course, such a prohibition would be applicable to any contract entered into subsequent to its enactment. In complying with this legislative mandate, the Comptroller has not violated any of the petitioner's rights, be they contractual or constitutional. This conclusion is not out of harmony with our decision in the *Weber* case for two reasons: first, as previously noted, no contract within the meaning of the *Kranker* case was established by an administrative practice, and second, prior to the enactment of section 431, there was no provision comparable to that contained in section 341 (subd. j) by which the inclusion of termination pay in the computation of retirement benefits was prohibited.

The judgment in the *Lecci* case should be affirmed, without costs.

THE GREENWALD CASE.

The questions in this appeal are raised by an action for declaratory judgment. Appellant and those he represents have not retired from their employment with the Nassau County Police Department. By chapter 503 of the Laws of 1971, the Legislature enacted section 431, effective April 1, 1972. That section provides, *inter alia,* that lump sum payments for accumulated but unused sick leave, accumulated but unused vacation pay, and '' any form of termination pay '' shall not be included in the salary base for computing retirement benefits. On March 8, 1971, a collective bargaining agreement was entered into between the Nassau County Police Department and the Policemen's Benevolent Association, retroactive to January 1, 1971, providing that, after 20 years of service, retirees would receive termination pay computed on a basis of three days per year of completed service and four days for each year of such service on or after January 1, 1972. The agreement also contained provisions for lump-sum payments for accumulated and unused sick leave and lump-sum payments for accumulated but unused vacation credit. Appellant sought a declaration that section 431 was unconstitutional under section 7 of article V of the New York State Constitution. Special Term denied the requested relief

" except * * * as to the inclusion of vacation pay to the extent indicated in *Kranker* v. *Levitt* ".

At the outset, we reaffirm our holding in the *Weber* and *Lecci* cases as to how much, if any, termination pay and sick leave pay is includable in computing final average salary. In determining whether section 431 works an unconstitutional—impairment of contractual rights, the question is whether individuals, in accepting or continuing in public employment, did so in reliance upon a reasonable expectation that their retirement benefits would be computed by taking into consideration certain forms of compensation which the public employer had voluntarily chosen to pay. The fact that a contract grants to them the right to receive such payments does not, of course, in and of itself, establish a right to have the payments included in the computation of retirement benefits.

Considering the applicability of section 431 to termination pay, we refer to our holding today in the *Weber* case, and to the reasoning in the *Kranker* case, and conclude that a " contract " having been established with regard thereto, the retroactive application of section 431 would indeed constitute a deprivation of constitutionally protected rights. We therefore hold that employees who were members of the retirement system on or before the effective date of section 431, and who were the beneficiaries of collective bargaining agreements entered into on or before that date, shall be entitled to have included in the computation of their " final average salary " an amount of termination pay such as has been accrued in the last three years of their employment.[5]

In the case of accumulated but unused sick leave credits, we have held in the *Lecci* case that there was a valid statutory prohibition against the inclusion of such payments in final average salary, and that prior to the enactment thereof, no administrative practice, such as would establish a *Kranker*-type contract, had evolved. Thus, there was no reasonable basis for the expectation that such sick leave payments would be included in the computation of retirement benefits. Therefore, section

---

5. Since the contract provides for entitlement to four days' termination pay for years of service on or after January 1, 1972, the maximum number of days which can be included in final average salary, will be nine for employees retiring on or before December 31, 1972, 10 for employees retiring on or after January 1, 1973 but not later than December 31, 1973, 11 for employees retiring on or after January 1, 1974 but not later than December 31, 1974, and 12 for employees retiring on or after January 1, 1975, provided that the number of days of entitlement per year is not reduced by a collective bargaining agreement which is hereafter entered into.

431 is fully applicable to such payments and in no manner unconstitutional. The fact that a lump-sum payment for accumulated but unused sick leave has been held not to be an unconstitutional gift of public funds (*Matter of Teachers Assn., Cent. High School Dist. No. 3* [*Board of Educ., Cent. High School Dist. No. 3, Nassau County*], 34 A D 2d 351, *supra*) does not, as urged by appellant, require the conclusion that there is a constitutional right to the inclusion of such payments in the computation of retirement benefits, and nothing in our decision today bars the making of such lump sum payments.

Appellant challenges the decision at Special Term insofar as that decision limited the number of vacation days which could be included in the computation of final average salary to 30 in reliance upon the limitations imposed in the *Kranker* case. Appellant contends that the limitation in *Kranker* was based upon the fact that the collective bargaining agreement under which Kranker's rights were determined itself limited the number of vacation days for which a lump sum payment could be made to 30. Here, however, the collective bargaining agreement would, in some circumstances, allow employees to accrue unused vacation pay to a maximum of 60 days, and appellant contends that the lump-sum payment, which is to be included in the computation of final average salary, should be measured against this maximum. We disagree. The limitation to 60 of the number of unused vacation days for which a lump-sum payment will be made does not bear any reasonable relation to the actual number of unused vacation days which are "earned" in any given year of service. Therefore, that limitation should similarly bear no relation to the maximum number of days of vacation credit which can be included in the determination of final average salary. Moreover, the decision in *Kranker* to allow the inclusion of up to 30 days' vacation pay was based upon a contract established by administrative practice, rather than by the terms of a particular collective bargaining agreement. In fact, nothing in the *Kranker* decision makes reference to a limitation in the collective bargaining agreement of which *Kranker* was a beneficiary, the 30-day limitation having been established by the Comptroller many years earlier apparently without regard to the agreement covering *Kranker*. We therefore conclude that the contract benefits which are constitutionally protected from impairment by section 431 in this case are similarly limited to those which were so protected under the *Kranker* decision.

Judgment in the *Greenwald* case should be directed to be entered declaring that so much of section 431 of the Retirement and Social Security Law as prohibits the inclusion of termination pay in final average salary is unconstitutional as to persons who were members of the Retirement System on or before April 1, 1972 and for whom the right to receive termination pay existed pursuant to collective bargaining agreements effective prior to April 1, 1972, provided that the amount of termination pay which may be so included is limited to such amounts as are lawful under our decision in *Weber* v. *Levitt,* and declaring subdivisions 1 and 2 of section 431 constitutional. The order should thus be modified, on the law, so as to declare section 431 unconstitutional as herein stated, and, as so modified, affirmed, without costs.

HERLIHY, P. J., COOKE, KANE and MAIN, JJ., concur.

Judgment in the *Weber* case affirmed, without costs.

Judgment in the *Lecci* case affirmed, without costs.

Order in the *Greenwald* case, modified, on the law, so as to declare so much of section 431 of the Retirement and Social Security Law as prohibits the inclusion of termination pay in final average salary unconstitutional, and, as so modified, affirmed, without costs.