OPINION OF THE COURT
 

 Fuchsberg, J.
 

 The sole issue in the case is whether section 462 of the Real Property Tax Law is to be construed as exempting the residence of a bona fide clergyman from local property taxes when the religious organization that he leads does not own real property used exclusively for religious purposes.
 

 The statute reads as follows: "In addition to the exemption provided in section four hundred twenty of this chapter [since renumbered as section 421, subd 1, par (a)], property owned by a religious corporation while actually used by the officiating clergymen thereof for residential purposes shall be exempt from taxation”. Section 421 (subd 1, par [a]) exempts real property owned and used exclusively for religious purposes by an organization which itself is engaged exclusively in religious activities.
 

 It is unquestioned that the petitioning congregation is a religious corporation entirely devoted to such purposes. It conducts daily religious services and sponsors advanced studies in Talmudic law. Since its establishment in 1973, it always has carried on its spiritual and educational activities in leased or borrowed buildings at various sites within the Town of Ramapo. The only property to which it holds title is a single-family house used as a residence for the congregation’s rabbi and his household. His quarters are also used as his rabbinical office and study.
 

 Appellant tax assessor ruled that the rabbi’s residence was not exempt from real property taxes. The congregation thereupon commenced this proceeding to review that determination, only to have Special Term dismiss it on the ground that the prefatory "In addition to” language in the statute indicates that the entitlement to an exemption for an officiating clergyman’s residence embraced by section 462 is conditioned upon the religious organization having also qualified for an exemption by reason of ownership of property covered by section 421 (subd 1, par [a]). On review, however, a closely divided Appellate Division panel reversed, the majority holding that the congregation was entitled to the benefit of section 462 notwithstanding the fact that its synagogue is not housed
 
 *306
 
 in a building owned by the corporation. For the reasons that follow, we now uphold its determination.
 

 The history of section 462 of the Real Property Tax Law lights the way for our analysis. Though that section itself is of comparatively recent vintage, the practice of exempting church property from taxation dates to at least early biblical days (e.g., Genesis 47:26; Ezra 7:24), after which it blossomed into a tradition almost universally followed throughout western civilization. When, not unexpectedly, it was transplanted to this continent, its strength was such that it continued to be followed with full force even after the adoption of the American Constitution’s provisions for separation of church from State. Indeed, without gainsaying that the exemption, given by the State as a matter of grace rather than right, rests somewhat uneasily between the opposing poles of the "nonestablishment” and "free exercise” clauses of the First Amendment (compare
 
 Walz v Tax Comm.,
 
 397 US 664, 668-672, with
 
 id.,
 
 at pp 700-716 [Douglas, J., dissenting]; see, also, Tribe, American Constitutional Law, § 14-9, p 846), every jurisdiction in the United States today allows it as to real property. (See, generally, Pfeifer, Church, State & Freedom, pp 183-185.)
 

 Most States exempt clergymen’s residences as well. In New York, this phase extends back to 1892, when chapter 565 of the Laws of that year was enacted. Its grant of an exemption was for a "dwelling-house owned by any religious corporation and the lands upon which the same stands, while and during only the time actually used by the officiating clergyman of such religious corporation”. Significantly, the "In addition to” phrase which introduces the present form of the statute was completely absent. Rather, the "dwelling-house” exemption was self-standing and unqualified.
 

 Furthermore, the words "In addition to”, on which respondent places such heavy emphasis and on which we therefore focus with some particularity, in fact did not make an appearance until four years later when New York’s tax statutes were codified, and then only, after reiterating the language of the uncodified statute, in a concluding sentence that read, "Such exemption shall be in addition to that provided by [the predecessor of today’s § 421, subd 1, par (a)].” That sentence could not have been intended to serve other than a purely conjunctive purpose since the 1896 report of the Commissioners on Statutory Revision makes clear that no substantive change in the law was intended by the codifiers (Report of the Commis
 
 *307
 
 sioners, at p 19; see, also, McKinney’s Cons Laws of NY, Statutes, Book 1, § 422). Thus, this is not a case where there is no apparent guide to the subjective intention of the legislators (cf.
 
 Messina v Lufthansa German Airlines,
 
 47 NY2d 111, 115).
 

 True, when the residence statute was later amended, first to increase a prior $2,000 exemption limit to $3,000 (L 1944, ch 529) and then to extend it to the entire value of the clergyman’s residence (L 1959, ch 733), while the sentence as such was deleted, the words "In addition to” were transposed to the beginning of the statute. But, the mere contraction or carrying forward of vestigial language which, when long ago adopted, was not central to the statutory purpose is too common an occurrence in legislative drafting for us, without more, to attach special meaning to that fact, and most certainly not when it would undercut so established a practice as the one the statutory scheme had theretofore carried out here.
 

 Moreover, by no means do the statutory annals recited above suggest any legislative purpose to distinguish between a clergyman’s residence owned by a religious institution which leases its house of worship and one owned by a group with sufficient resources to purchase its sanctuary outright. To say the least, given prevailing community values and the proverbial financial straits in which many a religious organization characteristically finds itself (see, generally, Whitman & Trimble, Churches and Church Membership in the United States [1956]),
 
 *
 
 the creation of such a difference in treatment could hardly have taken place without legislative turmoil, of which not the slightest hint can here be found. In sum, the disputed phrase appears to have been included for no other purpose than to call attention to the parallel provisions in the two statutes; nothing in the wording, read with the meaning ordinarily assigned such terms, suggests any dependence of one statute on the other.
 

 Finally, the assessor’s contention that section 462 contemplates a "parsonage exemption” and therefore must be construed in accordance with the historical definition of "parsonage” or "manse”, while perhaps interesting, is hardly convincing. In support of this point, a definition of "parsonage” as
 
 *308
 
 lands appurtenant to an estate on which a church stands is urged upon us. But the authority cited for this proposition (Black’s Law Dictionary [4th ed], pp 819 [defining "glebe”], 1116, 1273-1274) fails to assert that this connection was a
 
 necessary
 
 element of a parsonage. In any event, and most pointedly, the statute does not provide the opportunity for such semantic niceties since it refers not to a "parsonage”, but, plainly and simply, to "property * * * used by * * * officiating clergymen * * * for residential purposes”.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler and Meyer concur with Judge Fuchsberg; Judge Jasen dissents and votes to reverse in the following memorandum: I would reverse the order of the Appellate Division and reinstate the judgment at Special Term, sustaining the appellant’s determination denying tax exemption, as a parsonage, to respondent’s residential property, for the reasons stated in the dissenting opinion of Mr. Justice Joseph F. Hawkins at the Appellate Division.
 

 Order affirmed, with costs.
 

 *
 

 Studies of church finances indicate that most carry forward little or no surplus from one fiscal period to the next, that even today the weekly donations of church members is their largest source of funds, and that endowments play a comparatively small role in church finances (Johnson, Picard & Quinn, Churches and Church Membership in the United States [1971]).