OPINION OF THE COURT
 

 Fuchsberg, J.
 

 We hold that the State Public Employment Relations Board (PERB) did not abuse its discretion or act in an arbitrary or capricious manner when it determined that, notwithstanding the provisions of the 1973 amendment to subdivision 4 of section 201 of the Civil Service Law, demands for (1) severance pay keyed in amount to the number of years of employment and (2) hospitalization insurance benefits for families of current employees who die after retirement are not prohibited subjects of collective bargaining in the public sector.
 
 [1]
 

 
 *403
 
 This consolidated article 78 proceeding was born of cross complaints filed with PERB by the Village of Lynbrook and the Lynbrook Police Benevolent Association (PBA). Each side alleged the other had failed to negotiate in good faith as to terms and conditions for renewal of their collective bargaining agreement.
 
 [2]
 
 PBA also accused the village of failing to preserve the
 
 status quo
 
 during negotiations by refusing to continue to honor the expired contract’s provision of termination pay for police personnel who chose to retire after 20 years of service (see, generally,
 
 Matter of Board of Coop. Educational Servs. of Rockland County v New York State Public Employment Relations Bd.,
 
 41 NY2d 753 [discussing the "Triborough doctrine”]).
 
 [3]
 
 The village contended that the PBA proposals on termination pay and hospitalization insurance were barred from the bargaining table by subdivision 4 of section 201, and it charged the police with bad faith in pressing for their consideration.
 
 [4]
 

 As presently formulated, the statute excludes "benefits provided by or to be provided by a public retirement system, or payments to a fund or insurer to provide an income for retirees, or payment to retirees or their beneficiaries” from
 
 *404
 
 the definition of "terms and conditions of employment”. It goes on flatly to state, "No such retirement benefits shall be negotiated pursuant to this article, and any benefits so negotiated shall be void”. Though • the conceded purpose of the legislation was to help government employers hold down the spiraling cost of pension benefits (see Governor’s Memorandum, NY Legis Ann, 1973, p 303), the PBA argues that it should not be applied so as to frustrate the policy of this State favoring collective bargaining in public employment (see
 
 Local 456 Int. Brotherhood of Teamsters v Town of Cortlandt,
 
 68 Misc 2d 645, 651 [Marbach, J.]; see, also, Ruffo, Residue of Sovereignty in New York Public Employment, 39 Albany L Rev 165).
 

 In essence, PERB adopted the PBA’s position on all issues,
 
 [5]
 
 ordering the parties to resume their negotiations on this basis. But, the Appellate Division, while it confirmed the board’s determination as to termination pay, dismissed that aspect of the proceeding involving the hospitalization benefits, finding them to be nonnegotiable "retirement benefits”. One Justice, in a partial dissent, would have gone further; he expressed the view that the termination pay item was subject to the same disqualification. For the ensuing reasons, PERB should be upheld.
 

 We emphasize at the outset the narrowness of our inquiry. The scope of our review of PERB’s interpretation of the Civil Service Law is a limited one. Simply stated, unless the board’s determination was "afiected by an error of law” or was "arbitrary and capricious or an abuse of discretion”, we will not interfere (CPLR 7803, subd 3). For, "[s]o long as PERB’s interpretation is legally permissible and so long as there is no breach of constitutional rights and protections, the courts have no power to substitute another interpretation”
 
 (Matter of West Irondequoit Teachers Assn. v Helsby,
 
 35 NY2d 46, 50). As the agency charged with implementing the fundamental policies of the Taylor Law, the board is presumed to have developed an expertise and judgment that requires us to accept its construction if not unreasonable (see
 
 *405
 

 Matter of Fisher [Levine],
 
 36 NY2d 146, 149-150;
 
 Matter of West Irondequoit Teachers Assn. v Helsby, supra,
 
 pp 50-51;
 
 Matter of Howard v Wyman,
 
 28 NY2d 434, 437-438; Civil Service Law, §§ 200, 205).
 

 In ruling that termination pay was not a "retirement benefit” forbidden by subdivision 4 of section 201, PERB reasoned not only that the award would be made to employees who terminate their services for reasons other than retirement, but that, since it would be in one lump sum geared to the length of tenure, it represents deferred compensation for services rendered, as opposed to the continuing, open-ended obligation of a pension. This result was one permissible for it to reach under a statute whose imprecise language and unrevealing legislative history afford but meager guidance to an agency called upon to distinguish negotiable benefits from those that are prohibited.
 

 Moreover, in so concluding, PERB expressly relied upon
 
 Board of Educ. v Associated Teachers of Huntington
 
 (30 NY2d 122, 128) and
 
 Matter of Weber v Levitt
 
 (41 AD2d 452, affd on opn below 34 NY2d 797, cert den 419 US 997), two recent decisions of this court. In
 
 Huntington,
 
 we held that a lump-sum retirement incentive was not a feature of a "retirement system”, which section 113 of the Retirement and Social Security Law forbade the municipality to create, because it was compensation for services actually rendered. Likewise, in
 
 Weber,
 
 we endorsed a holding that deemed computation of termination pay on the basis of the length of employee service a persuasive indication that it represented compensation for services performed year to year rather than solely in the year it was paid; accordingly, we supported a prorating of such sums in calculating the employee’s pension base (see Retirement and Social Security Law, § 302, subd 9). It therefore cannot be said that the distinction made by PERB in the present case is either irrational or so contrary to public policy as to be "legally [im]permissible” (cf.
 
 Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.],
 
 37 NY2d 614, 616-617; see, generally, Ruffo, Sovereignty Revisited and Muddled in New York Public Employment, 416 NYS2d, Advance Sheet No. 2, June 27, 1979, p 31).
 
 [6]
 

 
 *406
 
 PERB’s determination that hospitalization benefits are negotiable is also free from the taint of irrationality and legal interdiction. It could reasonably have concluded that this item, which is becoming an increasingly common term of employment in this country,
 
 [7]
 
 constituted neither "payments to a fund or insurer to provide an income for retirees” nor "payment to retirees or their beneficiaries” (see Civil Service Law, § 201, subd 4). For here the PBA requested only contributions
 
 to an insurer
 
 to provide
 
 hospitalization beneñts.
 
 Moreover, it seems clear on its face that such insurance, especially to protect those whose intimate dependency on an employee make their concern his concern, is not brought within the common understanding of the general statutory term "retirement benefits” merely because the plan would continue in effect after current employees retire.
 

 Further, to the extent that the purpose of subdivision 4 of section 201 was to insulate public employers from pension demands incorporating open-ended escalation factors, the bargaining process itself provides a similar safeguard here where no constitutional provision prohibits the abrogation of such benefits in future contract years (cf.
 
 Cook v City of Binghamton,
 
 48 NY2d 323). And finally, since the Civil Service Law itself establishes just such a plan for employees and retired employees of local governments (Civil Service Law, § 163, subd 4; see, also, General Municipal Law, § 92-a), it would be odd, to say the least, for the Legislature to have wished to blunt the force of these independent provisions without a telltale declaration of its purpose (cf.
 
 Congregation Kollel Horabonim v Williams,
 
 48 NY2d 301).
 

 In sum, we conclude that PERB’s determinations were neither irrational, unreasonable nor otherwise affected by an error of law, and therefore the order of the Appellate Division should be modified so as to confirm those determinations in their entirety.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
 

 
 *407
 
 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . In public employment law, "prohibited” subjects are those forbidden, by statute or otherwise, from being embodied in a collective bargaining agreement. "Mandatory” subjects are those over which employer and employees have an obligation to bargain in good faith to the point of impasse. "Permissive” subjects are those as to which
 
 *403
 
 either side may, but is not obligated to bargain; though neither party must continue to bargain on a permissive issue to the point of impasse, once it becomes the subject of an agreement, it is fully binding.
 

 [2]
 

 . A bilateral refusal to negotiate in good faith as to the terms and conditions of employment may be deemed both an "improper employer practice” and an "improper employee organization practice” (Civil Service Law, § 209-a, subd 1, par [d]; subd 2, par [b]).
 

 [3]
 

 . [2] We observe that the "continuation of benefits clause” under which the terms of the negotiated contract would continue in effect past the date of its expiration and until a successor agreement was signed falls directly within the compass of
 
 Matter of Niagara Wheatfield Administrators Assn. (Niagara Wheatfield Cent. School Dist.)
 
 (44 NY2d 68). That ruling, which answers in the affirmative the question whether such a clause is a mandatory subject of negotiation, effectively removes this issue from the case.
 

 [4]
 

 . The disputed provisions as to termination and hospitalization, as pertinent, follow:
 

 1. "Termination Pay (Lump Sum at Retirement) * * * An employee * * * shall be entitled to cash payment for accumulated terminal leave computed on an entitlement basis of five (5) days for each year of completed service.”
 

 2. "Hospitalization (Deceased Employees) * * * If an active employee with one (1) or more years of service or a retired employee deceases, his * * * spouse shall be given the [same hospitalization] benefit * * * until she re-marries, and the employee’s children shall be given the benefit of this section until the age of nineteen (19) years unless attending college, in which case the age limit shall be twenty-three (23) years, or specifically qualified because of mental retardation, etc., in which case there shall be no age limit.”
 

 [5]
 

 . The only exception was as to so much of the hospitalization clause as purported to cover dependents of employees no longer in the service of the village (i.e., by reason of death or retirement) at the time the old contract expired. PERB reasoned that Lynbrook was under no obligation to negotiate as to persons who no longer were public employees. No challenge to that determination has been mounted in the courts.
 

 [6]
 

 . We note that PERB’s holding is consistent with as entrenched a practice of American employment as awarding severance pay. A recent sample of employment contracts covering 6.7 million workers reveals that almost one third, representing 2.5 million workers, provided some form of severance or termination allowance (US
 
 *406
 
 Department of Labor, Bureau of Labor Statistics, Bulletin No. 2013, Characteristics of Major Collective Bargaining Agreements, July 1, 1976).
 

 [7]
 

 . A sample of collective bargaining agreements arrived at in New York State in 1977 indicates that 87.5% provided for the addition of health and welfare fringe benefits or for a change in the terms of existing plans (NY State Department of Labor, 1977 Annual Report — Collective Bargaining Settlements in New York State, p 31).