Fuchsberg,
J. (dissenting). These appeals bring up for. review two orders of the Appellate Division vacating arbitration awards which determined the merits of separate grievances arising under an ongoing public sector collective bargaining agreement. I would reverse and reinstate each of the awards.
One of the disputes was precipitated after the petitioner, Onteora Central School District, adopted an austerity budget for the 1978-1979 school year following voter defeat of proposed budgets for that year. The pared budget did not provide funds for interscholastic sports. The district thereafter accepted money from a community-sponsored “booster” club for this purpose and, when these funds were insufficient to cover the cost of custodial services for preparation and cleanup of the gymnasium at basketball games, *772 had these performed by student volunteers. The respondent, Onteora Non-Teaching Employees Association then filed a grievance by which it challenged the right of any but school custodial staff members who were within the unit covered by the parties’ collective bargaining agreement to handle this work. In doing so, the association relied on section 1 of article XVII of the agreement, a standard past practice clause which provided that “any past practice, existing policy or employee benefit not modified, eliminated or superseded by any provision of this contract shall remain in force and effect for the life of this contract”.[1] Pursuant to the contract’s grievance machinery, in due course the dispute was referred to arbitration.
The second grievance ran a similar course. Its genesis too is found in the 1978-1979 winter sports program. This time, “booster” club money was received on condition that transportation costs be kept to a minimum; to comply, the district awarded the bus runs for sports e'vents to outside contractors. The association, again looking to section 1 of article XVII, cited the district’s past practice to utilize only bargaining unit members to operate the buses.[2]
In each case, the arbitrator, in sustaining the grievance, issued an award which required the district to pay members of the bargaining unit the compensation they would have earned had they performed the custodial and transportation services in question. The district then sought vacatur in separate proceedings brought pursuant to CPLR 7511. In the custodial case, a Justice of the Supreme Court vacated the award; in the bus case, another Justice of the same court sustained the award. In separate appeals, the Appellate Division, as indicated above, ruled that vacatur was in order. To reach this result, the court resorted to the theory that the arbitral decisions contravened “demonstrable public policy” (79 AD2d, p 417). Choosing to characterize the award of the wages employees of the union would *773 have earned had the district lived up to the agreement as an imposition of “a nonexistent debt or phantom expense” (79 AD2d, p 418), it decided that the arbitrators had usurped an exclusive statutory duty of the State’s Commissioner of Education to resolve disputes concerning which “ordinary contingent expenses” may be incurred by a school district when the voters have failed to approve a budget (Education Law, § 2024). To this it then added the makeweight that the awards ran counter to subdivision 2 of section 1718 of the Education Law, which limits gifts received by school districts to the purposes for which they are given.
All this, however, is beside the point. It simply ignores the fact that the arbitrators’ determinations of the contractual rights and obligations of the parties bore no relation whatsoever to the determination of whether a school district was authorized to expend funds for a particular purpose under a contingency budget. The first was a subject for legal, or, as in this case, arbitral resolution, while the latter was for the district to decide on the basis of statutory obligations under section 2023 of the Education Law, or, if the district’s judgment were challenged, by the commissioner under section 2024. Once the arbitrators determined that the agreement imposed an obligation on the district to assign only its regular custodians and bus drivers for the interscholastic sports program, the district was duty bound to do so. That duty and its concomitant cost then became an ordinary contingent expense of the district, not because of any ruling by the arbitrators, but rather because, under existing rulings of the commissioner, “legal obligations of the district” are ordinary contingent expenses (see Matter of Reinhardt, 16 Ed Dept Rep 448, 449; Matter of Ughetto, 12 Ed Dept Rep 162, 164). It is revealing that an interpretative bulletin of the State Education Department itself mandates that collective bargaining agreements be honored during austerity periods.[3]
*774 Nor was there any repugnancy between the awards and section 1718. The district was free to accept or reject donations, but this did not give it the license to disregard its collectively bargained obligations to the association with impunity. Moreover, the arbitrators did not attempt to single out what funds the district was to apply to the satisfaction of the awards. The payments could come from the general revenues of the district, just as did other contract-based monetary commitments. So, as was true of the district’s contention with regard to section 2024, by raising its section 1718 issue, thus begging the question as to what were the obligations fixed by the agreement, it drew the courts into consideration of matters which were not for them to decide, i.e., the merits of the underlying disputes.
It therefore here needs reiteration that “[ijncantations of ‘public policy’ may not be advanced to overturn every arbitration award that impairs the flexibility of management of a school district” (Matter of Port Jefferson Sta. Teachers Assn, v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899; see, also, Matter of Wyandanch Union Free School Dist. v Wyandanch Teachers Assn., 48 NY2d 669, 670). To the contrary, if anything, arbitration is supported by the strong public policy with which our State favors public sector collective bargaining (see Civil Service Law, § 200; see, also, Matter of Incorporated Vil. of Lynbrook v New York State Public Employment Relations Bd., 48 NY2d 398,403-404; Matter of Board ofEduc. v Yonkers Federation of Teachers, 40 NY2d 268, 273; cf. NY Const, art I, § 17; Labor Law, § 700).
In particular, among terms and conditions of employment which are the most legitimate goals'of such bargaining, traditionally and now, are job security and the opportunity to perform available work (see Abood v Detroit Bd. of Educ., 431 US 209; Fibreboard Corp. v Labor Bd., 379 US 203, 210-214; 2 Werne, Administration of the Labor Contract, § 39.02; 33 NY Jur, Labor and Labor Relations, § 203). It is undenied that subcontracting is a mandatory subject of such negotiations (Matter of Saratoga Springs School Dist., 11 PERB 3057). Nor, either in the public or *775 private sectors, can one underestimate the degree to which harmonious and stable labor relations are dependent on the mutuality of trust engendered by the flexibility inherent in past practice clauses.
Finally, these observations are not without sensitivity to the district’s understandable desire to have continued an interscholastic athletic program in the face of the voters’ refusal to provide budgetary support. To help meet this problem, it certainly might have sought from the employees a voluntary adjustment in the collective bargaining agreement or, perhaps, it could have resubmitted the item to the public. But it simply could not impose a unilateral solution at the expense of the employees’ work opportunities, to the preservation of which, as both arbitrators found, the district had pledged itself in the exchange of commitments for which the bilateral agreement stood.
It therefore follows that the orders appealed from should be reversed and the arbitrators’ awards reinstated.
Orders affirmed, etc.

. The arbitrator framed the question presented to him as follows: “Did the District violate Articles I and XVII of the Agreement by assigning custodial duties associated with the basketball season outside of the bargaining unit? If so, what shall be the remedy?”

. The exact issue submitted to the arbitrator was: “Did the District violate Article I, VIAI and A 2, and/or XVII1,2,3, and 4 in its assignment of certain bus runs to contract drivers who were not bargaining unit members and, if so, what shall be the remedy?”

. Before the arbitrators, the district never contended that the custodial and bus driving work at issue would not constitute activities for which necessary and contingent expenses would be payable if contractually required. Instead, it argued that it was not contractually so required. The arbitrators found to the contrary, under the past practice *774 clause. In short, no issue of public policy emanated.