OPINION OF THE COURT
 

 Jasen, J.
 

 We are asked to decide whether public policy is offended by a term of a public employees’ contract continuing, after expiration of the contract and during the negotiation of a subsequent contract, a provision that ties school administrators’ salaries to teachers’ salaries. We hold that under the facts here presented continuation of the tie-in provision does not violate public policy.
 

 On July 1, 1973, Niagara Wheatfield Central School District (school board) and Niagara Wheatfield Administrators Association (association) signed a collective bargaining agreement effective until June 30, 1975. A provision of this agreement tied salaries of association members to those received by teachers according to a mathematical formula; changes in pay rates for teachers would therefore alter the salaries of administrators. (Art XIX.) Another term of the agreement, paragraph D of article II, provided: "The current negotiated agreement and established fringe benefits between the Board of Education and the NWAA [association] shall remain in effect until modified or changed by mutual agreement in subsequent negotiations.” As the expiration date of the contract approached, the parties negotiated unsuccessfully to reach a new agreement. In the meantime, the teachers negotiated a new contract with the school board which provided for an increase in their compensation. The administrators requested that their salaries be adjusted to reflect the increases granted the teachers in accordance with the tie-in provision of the contract as prescribed in paragraph D of article II, but the school board refused upon the ground that the association’s contract had expired. The association responded by pursuing a grievance procedure established in the agreement, the final step of which was arbitration. No objection was raised by the school
 
 *72
 
 board to this procedure. After a hearing, the arbitrator issued an award stating: "The district [school board] violated the contract when it failed to pay the administrators on July 1, 1975 according to article XIX. The district [school board] is ordered to reimburse each administrator according to article XIX from July 1, 1975 until a new contract is agreed to by the parties.”
 

 Special Term confirmed the arbitration award. On appeal to the Appellate Division, the school board, for the first time, argued that continuation of the tie-in provision, after the expiration of the agreement, violated public policy by emasculating the school board’s ability to negotiate a new contract effectively. The Appellate Division unanimously reversed and remitted the matter to the arbitrator for a new award. That court concluded that the "continuation” provision of paragraph D of article II was void as against public policy and accordingly held that the award based thereon, which had the effect of extending the 1973-1975 contract provision with respect to administrators’ salaries until such time as a new contract should be agreed upon, was also void as against public policy.
 

 The threshold question raised by the association is whether the school board may raise, for the first time on appeal to the Appellate Division, the issue of unenforceability of the contract upon the ground that it contravenes public policy. We believe that it can. Where a contract provision is arguably void as against public policy, that issue may be raised for the first time at the Appellate Division by a party, or by the court on its own motion.
 
 (O’Mara v Dentinger,
 
 271 App Div 22, 32-33.)
 

 Resolution of the public policy issue presented in this case requires an examination of the public employment collective bargaining process. Public employers are clothed with broad powers to recognize, negotiate with and enter into contracts with employee organizations with respect to terms and conditions of employment.
 
 (Syracuse Teachers Assn. v Board of Educ.,
 
 35 NY2d 743, 744;
 
 Board of Educ. v Associated Teachers of Huntington,
 
 30 NY2d 122, 130; Civil Service Law, § 204, subd 2.) Where such contracts spring into controversy, the parties may provide for arbitration as an expeditious means of resolving the conflict.
 
 (Board of Educ. v Bellmore-Merrick United Secondary Teachers,
 
 39 NY2d 167.) Once such a resolution is reached by the arbitrator, the courts generally have
 
 *73
 
 no power to consider or pass upon the merits of the dispute. (CPLR 7501.) Were judicial intervention permitted, the very purpose of arbitration, to finally resolve conflicts between consenting parties, would be thwarted.
 

 Nevertheless, the freedom of a public employer to contract with an employee organization, although broad, is not wholly unrestrained. Any provision of a collective bargaining agreement which contravenes public policy, statute or decisional law may not stand
 
 (Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],
 
 42 NY2d 509;
 
 Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist,
 
 38 NY2d 137, 143;
 
 Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.],
 
 37 NY2d 614, 616-618;
 
 Matter of Burke v Bowen,
 
 40 NY2d 264, 267), and an arbitration award effectuating such a provision is vulnerable to attack
 
 (Matter of Board of Educ. v Yonkers Federation of Teachers,
 
 40 NY2d 268, 274).
 

 The restraints imposed by public policy on the scope of the public employment collective bargaining process stem from the need "to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government.” (Civil Service Law, § 200.) A public employer may not, through a collective bargaining agreement, jeopardize its effectiveness by relinquishing control of essential facets of its operation. In some cases a specific statute will proscribe such an abrogation of authority
 
 (Matter of Union Free School Dist. of Cheektowaga v Nyquist,
 
 38 NY2d 137, 143,
 
 supra),
 
 while other times public policy will serve this salutary function
 
 (Matter of New York City School Bds. Assn. v Board of Educ.,
 
 39 NY2d 111, 121; see, generally, Koretz and Rabin, Labor Relations Law, 28 Syracuse L Rev 75, 91-106; McHugh, New York’s Experiment in Public Employee Relations: The Public Employee’s Fair Employment Act, 32 Albany L Rev 58, 86-89).
 

 In the case before us, we must first observe that the tie-in provision alone is not offensive to public policy. In fact, a tie-in provision similar to that here presented was statutorily required until 1971. (Education Law, § 3103, repealed 1971.)
 

 Neither can it be said at this time that the continuation of the tie-in provision during the period of contract negotiation contravenes public policy. Although the bargaining position of the association is thereby bolstered, the school board’s
 
 *74
 
 ability to negotiate effectively has not been so encumbered that it has, in essence, lost control over this important facet of its operation. While the agreement guaranteed salary increments to association members when teachers’ salaries were increased, nothing in the agreement assured that teachers’ salaries would be increased substantially or even at all during the period of negotiation between the school board and the association. That the school board
 
 voluntarily
 
 agreed to raise teachers’ salaries during the period of negotiation with the association, thereby raising association members’ salaries, hardly demonstrates that the school board has lost control over its negotiations with the association. Moreover, there is no evidence that enforcement of the continuation provision would imperil the school board with impending financial crisis. (Cf.
 
 Matter of Board of Coop. Educational Servs. of Rockland County v New York State Public Employment Relations Bd.,
 
 41 NY2d 753, 757-758.)
 

 It is critical to note that the tie-in provision was only to "remain in effect until modified or changed by mutual agreement in subsequent negotiations.” (Art II, par D.) Surely it was the expectation of the parties that the negotiations span a period of relatively short duration. The longer the negotiations linger, the greater is the indication that the school board has lost its ability to bargain effectively. Such an eventuality might well be seen as a violation of the "public policy of the state * * * to promote harmonious and cooperative relationships between government and its employees” (Civil Service Law, § 200; cf.
 
 Matter of Board of Educ. v Yonkers Federation of Teachers,
 
 40 NY2d 268,
 
 supra).
 
 A protracted course of negotiation might also suggest a breach of the duty to negotiate in good faith, for the association, enjoying salary increments flowing from the tie-in provision, might impermissibly cease conscientious pursuit of an equitable agreement with the school board. In the present case, although the parties have failed since the expiration of the contract to agree on a new contract, we cannot say upon the record before us that either public policy or the duty to negotiate in good faith has been violated.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, Niagara County, reinstated.
 

 
 *75
 
 Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, etc.