■ In the Matter of WINDSOR CENTRAL SCHOOL DISTRICT, Appellant, v WINDSOR TEACHERS ASSOCIATION, Respondent.—Appeal from an order of the Supreme Court at Special Term, entered May 14, 1979 in Broome County, which (1) denied petitioner's motion to stay arbitration, and (2) directed petitioner to proceed to arbitration in accordance with the terms of the collective bargaining agreement. The petitioner, Windsor Central School District (School District), and the respondent, Windsor Teachers Association (Teachers), entered into an agreement in 1977 which provided a grievance procedure culminating, if necessary, in binding arbitration. That agreement expired on June 30, 1978 and prior to the adoption of a successor contract, a grievance arose in September of 1978. The grievance was not resolved during the preliminary stages of the grievance procedure and arbitration was demanded by the Teachers on December 18, 1978. The School District seeks to stay arbitration pursuant to so much of CPLR 7503 (subd [b]) as provides it "may apply to stay arbitration on the ground that a valid agreement was not made [to arbitrate]". The pertinent part of the otherwise expired 1977 agreement provides as follows: "This Agreement is in effect from February 3, 1977 through June 30, 1978. In the event a new Agreement is not reached prior to June 30, 1978, the Tri-Borough Doctrine, as interpreted by PERB, shall be used in determining conditions of employment during the hiatus until a new Agreement is reached." The School District does not seem to dispute that the contract does control the public employer-public employee relationship after June 30, 1978. However, it contends that the reference to PERB (Public Employment Relations Board) and/or the Tri-Borough doctrine renders the otherwise definite commitment to arbitrate illusive and not the clear and unequivocal commitment required by the case of *Matter of Acting Supt. of Schools of Liverpool Cent. School*

*Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509). While the School District in its brief refers to the 1977 agreement as "expired", the plain and simple import of its proviso quoted above is that it did not expire until a new contractual relationship was entered into. The contract unequivocally provided in its article 24 for the arbitration of disputes "based upon an alleged violation or a variation from the provisions of this Agreement or the interpretation of application thereof." The petition by the School District for a stay presents nothing more than a dispute as to the application of the contract provisions and the issues raised are for the arbitrator. The School District has failed to demonstrate any basis for judicial interference with the path of arbitration which was voluntarily accepted by it in the 1977 agreement. (See *Matter of Niagara Wheatfield Administrators Assn. [Niagara Wheatfield Cent. School Dist.]*, 44 NY2d 68, 72-73; *Board of Educ. v Barni,* 49 NY2d 311.) Order affirmed, with costs. Greenblott, Main, Casey and Herlihy, JJ., concur.

Mahoney, P. J., dissents and votes to reverse in the following memorandum. Mahoney, P. J. (dissenting). In stating that this proceeding "presents nothing more than a dispute as to the application of the contract provisions and the issues raised are for the arbitrator", the majority has apparently concluded that the parties entered into a broad arbitration clause. Such a conclusion would invoke the well established rule that subsequent acts or documents purporting to terminate an agreement containing a broad arbitration clause raise issues for the arbitrator and not the courts *(Matter of Lipman [Haeuser Shellac Co.],* 289 NY 76; *Matter of Riccardi [Modern Silver Linen Supply Co.],* 45 AD2d 191, 195-196, affd 36 NY2d 945; *Matter of Popular Pub. [McCall Corp.],* 36 AD2d 927). In my view, however, the arbitration clause contained in the contract between the parties was not broad.* The agreement provides for a four-step procedure for resolving any "grievance", a term defined as a "complaint by a teacher or a group of teachers based upon an alleged violation or a variation from the provisions of this agreement or the interpretation of *[sic]* application thereof." The fourth step of the grievance procedure is arbitration. Thus, the parties have by this language limited the arbitrator's authority to the interpretation of only those contractual provisions which provide the teachers with various rights the violation of which may serve as the basis for a complaint. This arbitration clause is fundamentally different from one in which the parties have agreed to arbitrate any and all disputes arising out of or relating to the contract (cf. *Perlman Iron Works v Driscoll Co.,* 19 AD2d 824). In the latter situation, the parties have expressed their intention to have the arbitrator interpret all of the provisions in the contract. In the instant case, however, by limiting the arbitrator's authority to interpreting only those provisions which are the basis of a "grievance", the parties have evidenced an intention to withhold certain matters from the arbitrator's review, including interpretation of the duration clause which is central to resolution of the teachers' demand for arbitration. The underlying grievance for which arbitration was sought by the Windsor Teachers Association concerned the payment of salary and benefits to certain substitute teachers. It is clear that

---

* I am aware of the problems which can arise from using the labels "broad" and "narrow" to describe particular arbitration clauses (see *Matter of Macy & Co. [National Sleep Prods.],* 39 NY2d 268, 271). I am using the phrase "broad arbitration clause" to mean one which is unlimited and expresses the parties' intention to submit all matters concerning the contract to arbitration.

had this grievance arisen prior to the expiration of the collective bargaining agreement on June 30, 1978, it would have been a proper subject for arbitration. The problem in this case centers on the duration clause of the agreement, which states that certain conditions of employment will remain in effect until a successor agreement is reached. Since this duration clause could not have been the basis for a complaint filed by a teacher (i.e., a grievance), interpretation of that provision is for the courts since it raises the threshold question of whether there was an agreement to arbitrate grievances which arose after June 30, 1978. Accordingly, I would reverse the order of Special Term, reinstate the petition and grant the motion to stay the arbitration.

