In the Matter of the Arbitration between BOARD OF EDUCATION OF THE CONNETQUOT CENTRAL SCHOOL DISTRICT OF ISLIP, Appellant-Respondent, and CONNETQUOT TEACHERS ASSOCIATION, Respondent-Appellant. (Matter No. 1.)

CONNETQUOT TEACHERS ASSOCIATION, Respondent-Appellant, v BOARD OF EDUCATION OF THE CONNETQUOT CENTRAL SCHOOL DISTRICT OF ISLIP et al., Appellants-Respondents. (Matter No. 2.)

Second Department, February 22, 1983

APPEARANCES OF COUNSEL

*Ingerman, Smith, Greenberg & Gross (Warren H. Richmond, III,* of counsel), for appellants-respondents.

*Kaplowitz & Galinson (Daniel Galinson* of counsel), for respondent-appellant.

THOMPSON, J.

In 1967 the Board of Education of the Connetquot Central School District permitted the Connetquot Teachers Association to use certain parts of school buildings for office space. The association is the Taylor Law representative for approximately 500 teachers and other professional employees. It has used the school space continuously since 1967, but no written lease has ever been executed. In 1979, while negotiations for a new contract were under way, the board demanded that the association vacate the office space. An apparent subsequent oral understanding permitted the association to continue to use the space. The parties later entered into a contract which does not contain any reference to the office space. The contract does, however, contain a broad arbitration clause covering the "employment relationship".

In August, 1981, the superintendent of schools advised the association that its "license" to use the office space was being terminated, and a notice to that effect was served in October, 1981. Meanwhile, the association had commenced an action (Matter No. 2) to enjoin its removal from the offices until arbitration proceedings on the question could be completed. The association also demanded arbitration, and the school board sought to stay arbitration (Matter No. 1). Nonetheless, arbitration commenced, but the board did not participate so it would not prejudice its application for a stay.

The school board has contended, *inter alia,* that the issue is not arbitrable because the grant of office space to the association violates public policy and violates section 414 of the Education Law.

Special Term, *inter alia,* granted the association's application to convert its injunction action to a proceeding to compel arbitration; dismissed the board's application for a stay of arbitration, and permitted the board to present evidence at the already commenced arbitration hearing. Special Term determined, *inter alia,* that the question of office space fell within the arbitration clause. We do not agree. An award of the right to continue to use the prem-

ises in issue would be contrary to the New York State Constitution, statute, and public policy. Accordingly, arbitration is not required (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist.* [*United Liverpool Faculty Assn.*], 42 NY2d 509).

In its simplest terms, the question is whether the school board must go to arbitration to regain possession of school property which it has permitted others to use. There is no lease and the right to use the office space was not covered in the parties' collective bargaining contract. We cannot agree with the association that there has been consideration to the school board for the property's use so as to make the association a lessee. The association is merely a licensee for the use of the office space, and its license is revocable at the will of the school board.

Section 414 of the Education Law provides that a school board may allow school premises to be used for a variety of purposes, including use by civic, social or recreational groups, when the premises are not in use for school purposes. It appears that the board has done only that, permitted the association to use rooms which were not in use, and that the use can be terminated when the board wishes to revoke the original permission. If the board had agreed to let a local senior citizens club use a classroom for a series of classes in a year when the school schedule left the classroom free, the board would not have to engage in legal proceedings the next year to regain the classroom because a new schedule no longer left the room available. Nor do we believe that the association, because it represents teachers and other professional employees, somehow would have a vested standing beyond the hypothetical senior citizens group. Neither attained the status of a lessee. To grant the association greater rights or to compel the board to participate in arbitration or to take other legal proceedings would violate both public policy and section 1 of article VIII of the State Constitution. That section prohibits school districts (and other municipal entities) from giving or lending money or property to aid, *inter alia,* private undertakings and associations. We do not believe that the board's power to permit entities to use school properties not otherwise in use can be read so broadly as to create a right in the

association contrary to constitutional provisions prohibiting gifts or alienation of public property in the absence of leases or other compensation. Indeed, we are not convinced that the association's use falls within the purview of permitted uses under section 414 of the Education Law because its business and functions are for its members and are not open to the general public. A number of years ago the State Comptroller expressed a similar view when asked whether it would be permissible to establish a teachers' credit union within school facilities. The Comptroller concluded that a teachers' credit union was "not an entity whose purposes and functions [fell] within the obvious intent of section 414 of the Education Law" (Opns St Comp, 1969, Opn 69-58 [Feb. 24, 1969]). A credit union, like a teachers association, is designed to forward the interests of its members and is not open to membership by or participation of the general community.

In light of the foregoing, we conclude that this matter need not proceed to arbitration.

O'CONNOR, J. (dissenting). I vote to affirm, insofar as appealed from, Special Term's order and judgment, *inter alia,* directing the board of education to arbitrate the grievance filed by the teachers union.

As a matter of law this court is competent to take cognizance of but one issue on this appeal: The question of the arbitrability of the union's claim to continued use and occupancy of office space in the school district's high school and one elementary school by virtue of the parties' July, 1979 collective bargaining agreement, as well as a long-standing labor-management practice and an express understanding reached during the spring, 1979 negotiations for that agreement as memorialized in a May, 1979 letter from the union president to the district's superintendent of schools. CPLR 7501 expressly forbids judicial examination of the merits of the union's claim (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509, 515 [GABRIELLI, J., concurring]).

The arbitration clause in the parties' collective bargaining agreement is a broad one. It makes no exception for disputes concerning the use of employer property, even

though that very issue was negotiated in spring, 1979 immediately prior to the July, 1979 agreement (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist.* [*United Liverpool Faculty Assn.*], *supra*). Under the clause, the parties agreed to refer to arbitration any grievance "aris[ing] out of an employment relationship, or a contractual application, meaning or interpretation", and under the agreement a "grievance" was broadly defined to include "any claimed violation, misinterpretation or inequitable application of the existing laws, policies, rules, procedures, regulations, or administrative orders and, in addition, work rules affecting this School District which relate to or involve employees' health or safety, physical facilities, materials or equipment furnished to employees, or supervision of employees." The agreement does not particularize any of the rights, obligations or privileges that may be embodied in such rules, practices and policies. Nor does any clause purport to merge past rules, practices and policies into the new contract; instead, the agreement expressly provides the opposite: The *agreement's* provisions are "incorporated into and * * * considered part of the established policies" of the employer, and only those past rules, practices and policies that "conflict" with the agreement are "supercede[d]" [*sic*]. Nothing in the agreement either provides for, or conflicts with, the employer's established prior policy, which authorized the union's use of office space within the district high school and one elementary school. I therefore conclude, as did Special Term, that under the collective bargaining agreement the union's grievance was governed by the arbitration provision.

The employer objects, however, on the ground that the *law* prohibits arbitration of this particular grievance.

It is not disputed that the union's use of the office space is not a *mandatory* subject of collective bargaining under subdivision 2 of section 204 of the Civil Service Law (see *Matter of Board of Educ. v Yonkers Federation of Teachers,* 40 NY2d 268). In this case, however, the union's charge is not a failure by the employer to *negotiate* the matter in good faith under subdivision 1 of section 209-a of the Civil Service Law, but its breach of a previously negotiated past practice (carried forward by their spring, 1979 agreement)

under which, as the employer concedes, the union had been permitted to use the office space.

The employer argues that its agreement might constitute improper employer interference (see Civil Service Law, § 209-a, subd 1) with the employees' right to choose their collective bargaining agent (see Civil Service Law, § 202), and points out that the Public Employment Relations Board (see Civil Service Law, § 205) has ruled in recent decisions that a public employer's provision for office space assists the union in the conduct of its internal affairs as well as in representational duties, and therefore raises the *possibility* of improper employer support of the benefited collective bargaining agent (see *Matter of Police Assn. of City of Mount Vernon [City of Mount Vernon]*, 13 PERB 3115 [par 13-3071]; *Matter of Amherst Police Club [Town of Amherst]*, 12 PERB 3124 [par 12-3071]; *Matter of Orange County Community Coll. Faculty Assn. [Orange County Community Coll.]*, 9 PERB 3116 [par 9-3068]). It is the employer, curiously enough, that raises this point without any allegation of employee complaints against the office space practice and without any specific allegation of how, in this case, the well-established office space practice with a well-established union would constitute an improper employer practice (see *National Labor Relations Bd. v Northeastern Univ.*, 601 F2d 1208).

The employer also argues that the union's use of district property falls within that small class of management prerogatives that, by reason of statutory prohibition or strong public policy, can never be surrendered through collective bargaining to arbitration (see *Matter of Niagara Wheatfield Administrators Assn. [Niagara Wheatfield Cent. School Dist.]*, 44 NY2d 68, 73; *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, 513, *supra; Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist*, 38 NY2d 137, 143; *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.]*, 37 NY2d 614, 616-618; *Syracuse Teachers Assn. v Board of Educ.*, 35 NY2d 743, 744). According to the employer, section 414 of the Education Law is just such a statute.

Subdivision 1 of section 414, in pertinent part, provides that "[s]choolhouses and the grounds connected therewith· and all property belonging to the district shall be in the custody and under the control and supervision of the trustees or board of education of the district. The trustees or board of education may adopt reasonable regulations for the use of such schoolhouses, grounds or other property, all portions thereof, *when not in use for school purposes or when the school is in use for school purposes if in the opinion of the trustees or board of education [such] use will not be disruptive of normal school operations, for such other public purposes as are herein provided",* such as public library purposes, social or civil meetings or entertainment, polling places and other similar uses (emphasis supplied).

In my opinion, this section of the Education Law is wholly inapplicable to the union's claim to district property in the case before us. Some sections of the Education Law authorize the use of district property for school purposes (e.g., Education Law, §§ 404, 1709, subd 6; § 1804, subd 1) and section 414 of the Education Law authorizes the use of district property for nonschool purposes. The issue, in my view, is whether the union's use of district office space can reasonably be considered a use for school purposes.

It is apparent that not all persons using district property are directly engaged in the most important of school purposes — the instruction of our children. Some persons lawfully on the premises must perform such necessary and noninstructional tasks as administration, support and maintenance. In fact, the very record before us shows that some 35 district employees are characterized as "administrators" and another 350 as "noninstructional". Are they trespassers absent the employer's invocation of section 414? Or, more to the point, does section 414 *forbid* the employer to permit their presence on district property? Furthermore, it is obvious that both instructional and noninstructional employees (not to mention the pupils themselves) are entitled to remain on the district premises while taking advantage of such noninstructional facilities as the cafeterias and bathrooms! The question, as thus refined, becomes whether the union's activity in this case

is sufficiently related to instructional activities so as to be characterized as serving a "school purpose".

The employer cites the State Education Commissioner's decision in *Matter of Brett (Board of Educ.)* (5 Ed Dept Rep 54), to distinguish a teachers' labor organization (Labor Law, § 721, subd 2) from a professional teachers' association (Education Law, § 237). All that decision held, however, was that a board of education, in the exercise of its discretion under section 414, could bar a labor organization from school premises on the facts in that case. I do not believe it is applicable to the case at bar.

It is settled law that even a public employees' union has a right of reasonable access to the employer's premises in order to serve its members (see *Matter of Orange County Community Coll. Faculty Assn. [Orange County Community Coll.]*, 9 PERB 3116 [par 9-3068], *supra; Matter of Board of Educ. [Albany Public School Teachers Assn.]*, 6 PERB 3029 [par 6-3012]; cf. *Republic Aviation Corp. v Board,* 324 US 793). The employer does not allege that the union is primarily using district office space for anything else. Instead, the employer admits that it wants to recover the space not for instructional purposes, but for administrative and support services (specifically, for the high school's department chairman and the elementary school's nurse).

I can think of no rational, principled distinction that would permit classification of such administrative and support services as sufficiently school-related without likewise so classifying the activities of a recognized union representing school employees. Although it is true that a minor portion of the union's activities *might* be concerned with its survival as the employees' exclusive bargaining agent, there is no reason to believe, on this record, that the effort devoted to self-preservation by the union's officers is any greater than that made by politically savvy school board members and administrators. The simple fact of the matter is that the basic purpose of the union's presence on the premises, like that of the board members and administrators, is to provide necessary services to the district's pupils. In this case the services in issue are instructional services, which are provided by the union members. The

union's specific function in this regard is the negotiation and enforcement of agreements that provide these services. The union's substantive role, therefore, is no different from the employer's; the parties merely sit on opposite sides of the table when resolving their differences over the terms under which such services are delivered. Likewise, before and after meeting the parties are segregated within the school property being used for these purposes.

I therefore pose the question: If the union here cannot lawfully use the district's property for the discharge of its statutory duties as a collective bargaining agent, should not management likewise be shown the door? Or shall we distinguish between labor and management by conjuring up the old prejudice that human labor is of lesser dignity than capital, despite the fact that it is only by virtue of our laws — not some divine right of property — that residents of this State have since 1795 (L 1795, ch 75; Graves, Development of the Education Law in New York, McKinney's Cons Laws of NY, Book 16, Education Law, §§ 1-600, p xiv) been permitted to accumulate property and entrust it to the management of school officials, and public employees since enactment of the Taylor Law (L 1967, ch 392) have been permitted to organize and collectively bargain the terms and conditions under which they render their services?

Furthermore, given the arbitrator's broad remediable powers, the fact that the union asks for what the majority of this court perceive to be an unlawful form of specific relief (i.e., continued use of district office space) would not preclude him from granting such other compensatory relief as he would deem appropriate under the circumstances (see *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.*, 45 NY2d 411, 417-418; *Matter of Manhattan & Bronx Surface Tr. Operating Auth. v Local 100, Transport Workers Union of Amer.*, 84 AD2d 749).

I therefore vote to affirm the order and judgment directing the parties to proceed to arbitration.

DAMIANI, J. P., and BRACKEN, J., concur with THOMPSON, J.; O'CONNOR, J., dissents and votes to affirm the order and

judgment insofar as appealed from, with an opinion, in which Brown, J., concurs.

Order and judgment (one paper) of the Supreme Court, Suffolk County, dated February 22, 1982, reversed insofar as appealed from, on the law, with $50 costs and disbursements, the complaint is dismissed, the application to compel arbitration is denied and the application to stay arbitration is granted.