88 N.Y.2d 763 (1996)
673 N.E.2d 902
650 N.Y.S.2d 617
The People of the State of New York, Respondent,
v.
Newton Knowles, Appellant.
Court of Appeals of the State of New York.
Argued September 10, 1996.
Decided October 22, 1996.
Cynthia Colt, New York City, and Daniel L. Greenberg for appellant.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (Bruce Seeliger, John M. Castellano and Robin A. Forshaw of counsel), for respondent.
Jonathan E. Gradess, Albany, and Alfred O'Connor for New York State Defenders Association, amicus curiae.
Chief Judge KAYE and Judges BELLACOSA, LEVINE and CIPARICK concur with Judge TITONE; Judge SMITH concurs in result in a separate opinion; Judge SIMONS dissents and votes to affirm in another opinion.
*765 TITONE, J.
At the defendant's trial for the crime of criminal sale of a controlled substance, the trial court refused to permit a second attorney assigned by Legal Aid to the defense to cross-examine a witness or to sit at the defense table. Because nothing on the record suggests that the presence of the second attorney, with whom defendant had established an attorney-client relationship, would have jeopardized the efficiency or fairness of the trial, we conclude that her complete exclusion from the proceedings constituted an abuse of discretion requiring reversal and a new trial.

I.
Robert M. Baum, as head of the Legal Aid Society's Criminal Defense Division, was appointed to represent defendant at his trial in a buy and bust case. Legal Aid in turn assigned two attorneys  Robert Jones and Melody Glover  to the defense and the pair arranged to share defense responsibilities at trial. Prior to commencement of trial, and in light of that arrangement, Jones, the defense attorney of record, requested that Glover be permitted to cross-examine the arresting officer since she was prepared to do so and would benefit from the opportunity to "actually do litigation." Jones explained that defendant "has formed a certain attachment to Ms. Glover and myself and I think that that's also to be considered." Defense counsel also assured the court that the two attorneys would not "make applications at the same time."
The court denied the request. The court stated that Jones had appeared for defendant at pretrial hearings without Glover's assistance, the case was "very simple and straightforward" and the Legal Aid Society "almost always [has] one attorney trying the case when there is one defendant."
Defense counsel then requested in the alternative that Glover at least be allowed to sit at the counsel table. Although *766 two attorneys appeared for the prosecution and sat at the prosecution table throughout the trial, the court again denied defense counsel's request, responding:
"I will put on the record and be very frank, this defendant is black, you are white, the other attorneys are white, Ms. Glover is black. I think all you're doing is trying to put in some type of sympathy, to have a very seasoned appearance * * *. I think you're trying to gain some undue advantage and I will not permit that. I think your application is made in bad faith" (emphasis supplied).
After a jury trial, defendant was convicted of criminal sale of a controlled substance in the third degree and sentenced.
The Appellate Division "strongly disapprove[d] of and [found] totally unacceptable the trial court's reason for denying defense counsel's application to have an additional counsel to assist him." (222 AD2d 456, 457.) Nonetheless, the Court affirmed the conviction on the grounds that defendant's constitutional rights were not impaired and defendant was not prejudiced by the court's exclusion of Glover. A Judge of this Court granted defendant's application for leave to appeal and we now reverse and grant a new trial.

II.
Trial courts possess inherent authority "to impose reasonable rules to control the conduct of the trial" (People v Hilliard, 73 N.Y.2d 584, 586; see also, Chemprene, Inc. v X-Tyal Intl. Corp., 55 N.Y.2d 900). However, in exercising that authority, a court should be "hesitant to interfere in an established attorney-client relationship" (People v Hall, 46 N.Y.2d 873, 875), and may not do so arbitrarily (Fuller v Diesslin, 868 F.2d 604, 607 [3d Cir 1989], cert denied sub nom. Perretti v Fuller, 493 US 873; People v Gomberg, 38 N.Y.2d 307, 313). Judicial reluctance to interfere with the strategy of defense counsel serves the paramount goal of securing effective legal representation for a defendant by creating "an atmosphere of trust and respect" between an attorney and client (People v Arroyave, 49 N.Y.2d 264, 270), which is a "`cornerstone of the adversary system'" (Wilson v Mintzes, 761 F.2d 275, 279 [6th Cir 1985]). Accordingly, judicial interference with an established attorney-client relationship in the name of trial management may be tolerable only where the court first determines that counsel's participation presents a conflict of interest or where defense *767 tactics may compromise the orderly management of the trial or the fair administration of justice (see, People v Arroyave, 49 N.Y.2d 264, 271, supra; United States v Panzardi Alvarez, 816 F.2d 813, 816 [1st Cir 1987]).
As a matter of routine practice, the law firms and institutional defenders who represent those accused of crimes often make choices as to the number of attorneys who are needed to assist with the defense and the delegation of various tasks to particular defense attorneys. Such choices may be as much matters of strategy as are choices concerning the order in which defense witnesses are to be presented, the identity of the attorney who will make opening statements or the length and scope of cross-examination. To the extent that representation by multiple attorneys at trial is a practice that may occasionally result in disruption, the trial court has discretion to impose reasonable restrictions to ensure the fair and orderly conduct of the proceedings. However, as is true with any strategic choice, the court's discretion to intervene should be exercised sparingly, particularly when a defendant may have developed a relationship of trust with his or her attorneys.

III.
The trial court in this case interfered with the defense by completely excluding cocounsel from the trial. However, the court did not support this ruling with any threshold findings that her participation would have delayed or disrupted the proceedings, created any conflict of interest, or resulted in prejudice to the prosecution or the defense (cf., People v Hall, 46 N.Y.2d 873, 875). Tellingly, in the trial court's own estimation, Glover was a "very seasoned" and "competent" attorney and the record establishes that she was fully prepared to proceed with the cross-examination of the police officer without delay. The two defense attorneys also agreed to object only during the questioning of witnesses that they had personally cross-examined  a practice that would eliminate any confusion or delay that would be caused by joint applications made to the court. The record also reveals that defendant expected Glover to cross-examine the arresting officer and desired this strategic arrangement.
Additionally, the court's stated perceptions that defense counsel was attempting to evoke sympathy from the jury by seeking the assistance of an African-American attorney and that the defense application was made in bad faith find absolutely no record support. The fact that defendant and *768 Glover shared the same race bore no relation to the efficient management of the trial, and the court's reliance on that factor to exclude Glover from the proceedings was intolerable.[*]
Indeed, nothing in the record contradicts defense counsel's statements that Glover's participation was sought in good faith to provide him with assistance in conducting the defense. Given that the court permitted the prosecutor of record to be assisted by a supervisor throughout the trial, no legitimate claim can be made that Glover's presence at the defense table would have impaired the efficient conduct of the trial.
Thus, the court's exclusion of Glover on this record can only be characterized as arbitrary and an abuse of discretion, since there was no rational reason to support the ruling. The court's rigid insistence that cocounsel not conduct any examinations or even assist at the defense table without considering whether her participation would have disrupted the efficient conduct of the trial or resulted in prejudice interfered with defense tactics in violation of defendant's right to the effective assistance of counsel and constitutes reversible error (People v Joseph, 84 N.Y.2d 995, 998; People v Hilliard, 73 N.Y.2d 584, 587, supra; see also, Wilson v Mintzes, 761 F.2d 275, 281, supra).
The dissent mischaracterizes the majority's holding, stating that it "necessarily holds that defendant was constitutionally entitled to two assigned attorneys" (dissenting opn, at 773) and "implies that if defendant has two counsel at any point" defendant has received "ineffective assistance per se" (dissenting opn, at 774) if the defense is reduced to one attorney. However, this case does not involve the assignment of two attorneys. Legal Aid was assigned by the court to represent defendant and that institution chose to divide the defense responsibilities between two attorneys  a choice that a private firm retained by a criminal defendant would also be free to make. Indeed, that defendant was represented by assigned rather than retained counsel is of no moment in this context, since the issue here is not whether an indigent defendant has a constitutional right to be represented by two attorneys (see, Bell v Watkins, 692 F.2d 999, 1009 [5th Cir 1982]), but rather whether *769 the court interfered with an existing attorney-client relationship. Accordingly, in this case we hold simply that in exercising its discretion to manage the courtroom, the court's interference with the defendant's established relationship with counsel must be justified by overriding concerns of fairness or efficiency  regardless of whether counsel is assigned or retained and regardless of whether defendant is represented by more than one attorney.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
SMITH, J. (concurring).
The exclusion of the attorney by a State Judge from participating in this case because counsel was African-American was a violation of the Equal Protection Clauses of the Federal (14th Amend) and State (art I, § 11) Constitutions, as well as a clear violation of the public policy of this State to render justice without regard to race. Not only was the attorney not permitted to cross-examine a witness, she was not even permitted to sit at the table with the defendant and the lead attorney because she was African-American.
When the lead defense attorney requested that a second attorney handle the cross-examination of one witness, the trial court's remarks were as follows:
"I will put on the record and be very frank, this defendant is black, you are white, the other attorneys are white, Ms. Glover is black. I think all you're doing is trying to put in some type of sympathy, to have a very seasoned appearance, and she has also appeared before me, by the way, and a very, very competent attorney, I would say. I spent three or four days just sitting there watching the trial. I think you're trying to gain some undo [sic] advantage and I will not permit that. I think your application is made in bad faith."
This statement alone is sufficient to demonstrate that the court abused its discretion in excluding the attorney from participation in the trial. Whether or not she was the lead attorney is not relevant here.
Ordinarily, a constitutional argument must be preserved at the earliest possible opportunity for it to be reviewed by the Court of Appeals (Cohen and Karger, Powers of the New York Court of Appeals § 169, at 641 [rev ed]; 1 Newman, New York Appellate Practice § 2.02, at 2-10). Here, the defendant made *770 several objections to Supreme Court's ruling regarding defendant's request for counsel. It was only after denying defense counsel's request for the third time that Supreme Court revealed the discriminatory basis for its rulings and counsel again objected. Nevertheless, counsel did not specifically object on the grounds that the ruling was a violation of the equal protection of the laws.
All facts pertaining to the constitutional issue are in the record before us. On appeal to the Appellate Division, the parties fully and explicitly briefed this constitutional issue. Defendant argued that his right to counsel, his right to the equal protection of the laws and the attorney's right to the equal protection of the laws had been violated. Specifically, the defendant argued the following in his brief to the Appellate Division:
"The trial court's unjustified exclusion of the second Legal Aid attorney from the trial not only deprived appellant of his constitutional right to counsel and of his constitutional right to equal protection of the law, but also deprived the Legal Aid attorney of her constitutional right to equal protection. U.S. Const. Amends. VI, XIV; N.Y. Const., Art. I, §§ 6, 11."
Each of these constitutional arguments was answered in the brief of the prosecutor. The Appellate Division addressed the constitutional issues in the following language:
"We strongly disapprove of and find totally unacceptable the trial court's reason for denying defense counsel's application to have an additional counsel to assist him. Despite our disapproval, we do not find that the defendant's constitutional rights were impaired or that he was prejudiced thereby." (222 AD2d 456, 457.)
Because the Appellate Division has expressly addressed this issue and decided that defendant's constitutional rights were not violated, preservation should not prevent review by this Court. Moreover, both parties have addressed the same constitutional issues in their briefs to this Court.
While both the majority and the dissent appropriately condemn the ruling of the Trial Judge, both determine that the equal protection issue argued in the Appellate Division cannot be entertained in this Court because it was not raised at the trial level. There is no dispute as to what happened, a question of law is involved and there appears to be no sound reason for a lack of review by this Court at this time.
*771 This Court has previously held that although raised for the first time on appeal, legal arguments may be reviewed, and indeed, dispositive, when the opposing party has offered no "factual showing or legal counterstep that might have been made if the argument had been tendered below" (People ex rel. Roides v Smith, 67 N.Y.2d 899, 901). Similarly, Supreme Court's statements in the record are dispositive of defendant's constitutional appeal and respondents have failed to offer a colorable counterargument that might have been made to the lower court. After denying counsel's request three times, Supreme Court made it clear that it was unwilling to entertain further objections. Under such circumstances, counsel was justified in not making an additional constitutional challenge to the very Judge whose conduct formed the basis of the challenge to preserve the issue for our review.
Furthermore, we have held that certain issues which impact public policy may be reviewed by this Court despite being raised for the first time on appeal (Matter of Niagara Wheatfield Adm'rs Assn. [Niagara Wheatfield Cent. School Dist.], 44 N.Y.2d 68, 72 ["Where a contract provision is arguably void as against public policy, that issue may be raised for the first time at the Appellate Division by a party, or by the court on its own motion"]). In Rose v Mitchell (443 US 545), the Supreme Court held that even where a defendant had been convicted on evidence showing his guilt beyond a reasonable doubt, that conviction could be set aside for racial discrimination in the Grand Jury. The Court stated, "The claim that the court has discriminated on the basis of race in a given case brings the integrity of the judicial system into direct question" (id., at 563; see also, Powers v Ohio, 499 US 400, 412 ["(a)ctive discrimination by a prosecutor (or judge) during (trial) condones violations of the United States Constitution within the very institution entrusted with its enforcement"]).
As also stated by the Supreme Court in Powers, "The Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system" (499 US, at 415; see also, People v Kern, 75 N.Y.2d 638, 654 ["`Discrimination within the judicial system is most pernicious because it is "a stimulant to that race prejudice which is an impediment to securing to (black citizens) that equal justice which the law aims to secure to all others"'"] [citation omitted]; cf., Rose v Mitchell, 443 US 545, 563, supra ["where the allegation is that the state judiciary itself engages in discrimination in violation of the *772 Fourteenth Amendment, there is a need to preserve independent federal habeas review"]). To refuse to consider the constitutional claims of the defendant is to immunize an erroneous determination of the Appellate Division from review, even when the error is of constitutional magnitude.
Racial discrimination is never a valid basis to support an exercise of discretion. Here, the presiding Judge issued a procedural ruling based solely on the skin color of the defendant and his counsel. Such action by a Trial Judge, if allowed to stand, improperly infects our entire judicial process. This grave violation of a clear public policy is properly condemned by this Court (1 Newman, New York Appellate Practice § 2.02, at 2-10), but is also the basis on which this conviction should be reversed.
Once the court in this trial excluded the attorney on the basis of race, reversal was required.
SIMONS, J. (dissenting).
The majority holds that error was committed when the Trial Judge refused defendant's request to have a second chair attorney from assigned counsel's office participate in his trial. It concludes the court's action unjustifiably interfered with defendant's constitutional right to counsel and that reversal is required even though defendant suffered no demonstrable prejudice as a result of the ruling. Concededly, defendant in this case received effective assistance of counsel and the Constitution guarantees him no more. Although the action of the court was not justified by the record, any error was harmless and the conviction should be affirmed. I therefore dissent.
A criminal defendant has a right to counsel at all material stages of the proceeding. If he cannot afford an attorney, the court must appoint one to represent him at public expense. The right is guaranteed under both the State and Federal Constitutions (NY Const, art I, § 6; US Const 6th Amend; see, Powell v Alabama, 287 US 45; Gideon v Wainwright, 372 US 335; People v Sawyer, 57 N.Y.2d 12, 18-19, cert denied 459 US 1178). The purpose underlying these guarantees is to insure that those charged with crime are represented by an effective advocate and thus ensure that they receive a fair trial (Wheat v United States, 486 US 153, 159; Strickland v Washington, 466 US 668, 689; United States v Cronic, 466 US 648, 658; and see, People v Claudio, 83 N.Y.2d 76, 79).
If a criminal defendant retains one or more attorneys, the court must respect that choice absent good cause to remove *773 counsel (see, Wheat v United States, supra). Indeed, even when an apparent conflict of interest exists between codefendants, the court must accept defendants' choice of retained counsel if the choice is knowing and the conflict is waived (People v Gomberg, 38 N.Y.2d 307). A court arbitrarily interfering with a defendant's chosen retained counsel risks an error of constitutional magnitude (see, Wilson v Mintzes, 761 F.2d 275; United States v Panzardi Alvarez, 816 F.2d 813, 816; People v Arroyave, 49 N.Y.2d 264).
In the case of assigned counsel, a defendant has no similar right to select an attorney or attorneys. For reasons of practicality and economy, the choice is a matter resting within the absolute discretion of the court (see, 2 LaFave and Israel, Criminal Procedure § 11.4; see also, Annotation, Indigent's Right to Particular Counsel, 66 ALR3d 996). Moreover, even after the court designates counsel the defendant does not have a categorical right to continue the assignment because he favors the attorney if the court has a supportable basis for ordering a change (People v Hall, 46 N.Y.2d 873; cf., Smith v Superior Ct., 68 Cal 2d 547, 440 P2d 65; and see, Annotation, Change of Appointed Counsel over Objection, 3 ALR4th 1227). When evaluating whether defendant has been accorded the constitutional right to counsel, the focus is on the adequacy of representation provided, not defendant's relationship with counsel (Morris v Slappy, 461 US 1, 13-14).
The majority concludes that defendant was denied effective assistance of counsel. But defendant does not claim he received ineffective assistance of counsel or that he did not receive a fair trial. Nevertheless the majority maintains that defendant was entitled to two trial attorneys and that the court's arbitrary interference with his relationship with one of them denied him effective assistance of counsel (see, majority opn, at 768). Presumably, it believes the constitutional guarantee encompasses that right. At least it identifies no other source  statute or common law  recognizing such a right. Thus, it necessarily holds that defendant was constitutionally entitled to two assigned attorneys and the failure to honor that right constitutes reversible error even in the absence of prejudice. That premise is not legally supportable under existing law. The Federal courts and State courts which have considered the subject have uniformly held that an indigent defendant does not have the right to two or more attorneys and the Supreme Court, when requested to do so, has refused to review those determinations (see, Bell v Watkins, 692 F.2d 999, 1009, cert denied sub nom. Bell v Thigpen, 464 US 843; *774 Crum v Hunter, 151 F.2d 359, 361, cert denied 328 US 850; People v Padilla, 11 Cal 4th 891, 906 P2d 388, 409-410, cert denied ___ US ___, 117 S Ct 107; Lowe v State, 650 So 2d 969, 974-975 [Fla], cert denied ___ US ___, 116 S Ct 230; State v Pizzuto, 119 Idaho 742, 810 P2d 680, 713, cert denied 503 US 908; Baird v State, 604 NE2d 1170, 1187 [Ind], cert denied 510 US 893; Johnson v State, 292 Md 405, 439 A2d 542, 548; Smith v State, 445 So 2d 227, 230 [Miss]; State v Lord, 286 SW2d 737, 740 [Mo]; DePasquale v State, 106 Nev 843, 803 P2d 218, 220, cert denied 502 US 829; State v Frye, 341 NC 470, 461 SE2d 664, 675, cert denied ___ US ___, 116 S Ct 1359). Nor is the new rule the majority establishes justified by the facts of this case or the purposes and concerns underlying the right to effective assistance of counsel.
Alternatively, the majority's holding implies that if defendant has two counsel at any point, if his defense team is reduced to one attorney he receives ineffective assistance per se. Such a rule is simply untenable.
In this case, defendant was assigned counsel and, by any accepted standard, his attorney provided him with effective representation resulting in a fair trial. Defendant does not claim otherwise. That should be the end of the matter because defendant received all that he was constitutionally entitled to. The Judge's remarks when rejecting trial counsel's request that a second attorney assist him were improper and its stated reasons for believing that the application was made in bad faith were unsupported by the record. But the Judge's conduct constituted trial error, not constitutional error, and it is subject to harmless error analysis.
The error was clearly harmless because defendant was not prejudiced by it. This was a simple trial on a charge of criminal sale of a controlled substance in the third degree resulting from a police arranged buy and bust. The People swore four witnesses, the undercover officer, the arresting officers and a chemist. The defendant swore one witness, a friend who testified that no sale had taken place. The jury was presented with a relatively brief trial involving only a question of credibility.
On the opening day of the trial, Mr. Jones, the attorney first designated by the Legal Aid Society to represent defendant and the one who had conducted all the prior proceedings without assistance, appeared with Ms. Glover and unexpectedly sought to have her examine one of the police officers. Whether she was there to offset the presence of a new hire sitting *775 in with the Assistant District Attorney or for some other reason is irrelevant. Mr. Jones admitted he had handled the examinations at the preliminary hearings, he acknowledged that the case was "straightforward" and he made no claim that he was incapable of handling the trial without assistance. He sought Ms. Glover's participation because she had prepared the cross-examination of one witness, because "[t]wo heads are better than one" and because the dual representation would be "mutually rewarding" to both attorneys. Defendant had formed a "certain attachment" with him and Ms. Glover, he said, and was "comfortable" with her handling part of the case. These were the "reasons" advanced to support counsel's application which provoked the Judge's remarks. Fortunately, the remarks and the ruling were made in the absence of the jury and could not have had any effect on its deliberations. They do not warrant the reversal of a valid conviction.
Nevertheless, the majority, focusing on the court's frustration of defendant's attempt to be represented by two lawyers, concludes that there must be a new trial because the court interfered with defendant's assigned counsel. However, Ms. Glover was not assigned to represent defendant, the Legal Aid Society was. It designated Mr. Jones, a competent attorney, to appear for defendant and he did so at all material stages of the proceedings. The court did nothing to deprive defendant of that representation and, as noted above, defendant does not claim that his counsel was ineffective. There was constitutional error here only if defendant enjoyed a right under those circumstances to determine that he was entitled to two lawyers and that Ms. Glover should be one of them. Assuming that defendant or the Legal Aid Society could unilaterally determine that he required the assistance of two or more lawyers limited only by the court's inherent power to control the orderliness of the proceedings  a legal proposition far from settled  and the court's ruling in this case violated that rule, its actions constituted no more than an abuse of discretion and the error was harmless because defendant received both effective assistance of counsel and a fair trial (see, People v Wicks, 76 N.Y.2d 128; see, People v Schaeffer, 56 N.Y.2d 448).
Finally, it should be noted that the majority has supported its holding by citing cases in which the court has interfered with defendant's right to retain counsel of his own choosing (see, e.g., People v Arroyave, 49 N.Y.2d 264, supra), in which the court has relieved sole assigned counsel (see, People v Hall, 46 N.Y.2d 873) or in which the court's conduct deprived defendant *776 of the right to counsel (see, People v Joseph, 84 N.Y.2d 995; People v Hilliard, 73 N.Y.2d 584). None of those circumstances exist here and none of the authorities support the rule the majority now advances.
In sum, defendant was represented by effective counsel and received a fair trial. In view of this, there is no basis to conclude that he received ineffective assistance because the court limited him to one attorney and no need to create a new constitutional right, unrecognized by any other court, merely to verify our unanimous disapproval of the Trial Judge's conduct.
The order of the Appellate Division should be affirmed.
Order reversed, etc.
NOTES
[*] We fully share the concerns of the concurrence regarding racially motivated decision making. However, our law is clear that, in a criminal case, arguments that were not raised or considered in the court of first instance are not "questions of law" within our constitutional review powers (see, NY Const, art VI, § 3; CPL 470.05 [2]; People v Iannelli, 69 N.Y.2d 684; cf., People ex rel. Roides v Smith, 67 N.Y.2d 899). Accordingly, we have no occasion to pass on the defendant's present equal protection arguments.